No. 3904

Second Circuit

(Second Division)

——

FREY ET AL. v. TURNER

——

(December 9, 1931. Opinion and Decree.)

——

A. S. Drew, of Minden, attorney for plaintiffs, appellees.

Watkins & Watkins, of Minden, attorneys for defendant, appellant.

TALIAFERRO, J. Plaintiff, Mrs. Emma I. Frey, authorized by her husband, brought this suit to recover from defendant the sum of $450 with 7 per cent per annum interest from June 1, 1928, until paid. She alleges that she contracted with defendant to rent a house and lot in the city of Minden for a stipulated rental period with the option of paying the sum of $600 cash on price thereof and placing the property in the building and loan association on or before June 1, 1928, and by that means paying for same; all of which she alleges appears from written contract between herself and defendant, attached to her petition. That she paid to defendant $450 contemporaneous with signing of said contract, hoping to be able to raise the additional $150 prior to June 1, 1928, in order to make the initial payment of $600 on the price of the property, as agreed, but when said date arrived she was unable to supplement her first payment with said additional amount and requested defendant to refund to her the $450 paid to him on the contract and that he agreed and promised to do so, but stated he could not at that time, being hard pressed for money, and desired to borrow the amount from her at interest at the rate of 7 per cent per annum, to which she assented; that on numerous occasions she demanded payment of said amount from the defendant, and each time he pleaded inability to do so, admitting, however, that he owed it.

The contract attached and referred to in the petition is as follows:

"Minden, La. 12/13/1927. "Rec'd from Mrs. J. R. Frey $450.00 to be applied to purchase price of house and lot on College St., located at corner of College & Pearl Sts. on Cameron lot. Mrs. J. R. Frey agrees to pay to Bobby Turner as rent on house and lot $46.00, Forty Six Dollars, per month until she can meet the full payment of ($600.00 cash) Six hundred Dollars cash and take up (20) twenty shares of Minden Building & Loan stock of June Series, 1927. The full price of house and lot is $4600.00, Forty-six Hundred Dollars."

Defendant admits the execution of said written contract, but does not construe it as does plaintiff. He admits receiving the $450 on the purchase price of the property, but denies that he ever consented to refund it to plaintiff, averring that he often demanded compliance by plaintiff with the terms of the contract. He prays for judgment ordering plaintiff to specifically perform said contract, and in the alternative for damages arising from her failure to comply therewith.

There was judgment for plaintiff as prayed for and defendant appealed.

As appears in the written contract, and from the evidence, plaintiff agreed to purchase the property described therein for $4,600, and actually paid $450 at time of its execution. She agreed further to take twenty shares of the stock of the Minden Building & Loan Association, June series, 1927, in connection with the sale and to pay $46 rental monthly for the property until she could meet the full cash payment of $600; or, in other words, until she could pay the additional $150 on the price.

The record further discloses that at some later date Mrs. Frey found that she would be unable to raise the additional payment of $150 to enable her to make the total cash payment of $600, and that she then visited the defendant and advised him of her inability to raise the amount, and would, therefore, be unable to carry out the original agreement to buy, and thereupon requested the refund and re-payment of the sum of $450, which amount had, theretofore, been paid by her to the defendant.

Up to this point it would seem that the parties to this litigation are substantially agreed.

It is contended by the plaintiff in her petition and in her testimony, her testimony being corroborated by that of her husband and daughter, that when she visited the defendant to advise him of her inability to complete the purchase of the house and lot, and requested the re-payment to her of the said sum of $450, deposited as aforesaid, that the defendant did not demand that the plaintiff specifically perform, as provided by the original contract, but agreed to repay the money at a later time; that he was at that time unable to make the repayment and further promised to pay interest on the money at the same rate of interest paid by the building and loan association, which, according to the record, was 7 per cent per annum. This is only partially denied by the defendant himself, he contending that this was to be done "under certain conditions." We quote the following from the defendant's testimony in this record:

"Q. Mr. Turner, you are the defendant in this case, are you not? The same Bobby Turner?

"A. Yes, sir.

"Q. You have collected rent on this house that Mrs. Frey is living in at the present time?

"A. Yes.

"Q. She pays you rent every month?

"A. Yes, very nicely.

"Q. She is a very satisfactory tenant?

"A. Yes.

"Q. Have you made improvements on that place down there?

"A. Some, yes.

"Q. When did you make those improvements, Mr. Turner?

"A. I believe I papered the bathroom and this winter when the pipe froze I put some rock around it.

"Q. In other words, you have exercised every right to ownership of that property, have you not?

"A. Well, I had to. It was assessed to me, I never had gotten rid of the title. I had to.

"Q. You received four hundred fifty dollars from Mrs. Emma I. Frey, did you not?

"A. Yes, sir.

"Q. Do you remember in June, 1928, when Mrs. Frey came in your office with her daughter, Miss Dorothy?

"A. I reckon, she did. I don't recollect any details specially about the occasion. She certainly came in there. I am quite sure she did.

"Q. You heard her testimony on the stand, did you not?

"A. Yes.

"Q. Did you tell her you would pay that money back and give her the same rate of interest as paid by the building and loan?

"A. Under certain conditions.

"Q. Under certain conditions?

"A. Yes.

"Q. But you did tell her that?

"A. On conditions, yes.

"Q. Let us get that straight. You told her that you would pay her the money back?

\*     \*     \*     \*     \*     \*     \*

"Q. You admit, Mr. Turner, that you agreed with Mrs. Frey to pay her the four hundred fifty dollars and to pay interest at the rate of 7 per cent, the same rate of interest as paid by the building and loan?

"A. According to the conditions.

"Q. You had repeated conversations with Mr. Frey later on about that?

"A. He approached me a time or two about it.

"Q. You do not deny that you told his wife that?

"A. No, sir; I did not at all."

It cannot be successfully urged by the defendant that the payment of $450 was put up as earnest money in the transaction to bind the deal, for the reason that the defendant in testifying says as follows:

"Q. It was not put up as earnest money in the transaction to bind the deal?

"A. No, sir; it was put up as payment on the place.

"Q. To be applied in the future, was it not?

"A. Well, you could call it applied whenever the deed was made.

"Q. It was not to be applied on the purchase price until the deed was made?

"A. (No answer.)

"Q. Answer the question.

"A. I cannot answer it. I don't know. It is up to the ruling of the court when it was to be applied.

"Q. But you did get the four hundred fifty dollars from Mrs. Frey?

"A. And gave her a receipt for it.

"Q. This money has not been repaid?

"A. It has not been repaid."

However, it is contended by the defendant that the certain conditions under which he would repay to the plaintiff the amount deposited with him were that the plaintiff was to produce a purchaser of the property at the price stipulated in the original contract. We may say that this evidence on the part of the defendant is not corroborated in any way by any other witness, but is denied by the plaintiff, her husband and daughter.

The trial judge in his decision in this case says as follows:

"According to all of the testimony Mrs. Frey has been occupying the house since December, 1927, or a total of 26 months at the time this suit was filed. She had paid the rent of $40.00 a month promptly. Turner had paid the taxes, insurance and repairs on the property and had mortgaged it to the Building & Loan Association. Thus far the parties are agreed. Mrs. Frey, her husband J. R. Frey and her daughter. Dorothy, all testify that defendant agreed to the abrogation of the agreement to purchase, and to repay the $450.00 deposited, with 7% interest. Defendant denies this, and says it was to be returned only on condition that plaintiff found a purchaser for the property at $4600.00.

"Undoubtedly, defendant could have sued for a specific performance of the contract, and he has the right to ask for it now in reconvention, but the question is whether the new agreement was made. In arriving at a decision in this or any other case I must be guided by the testimony, but

I have the right to weigh the testimony in the light of experience. It was evidently the intention of the parties to close up the trade soon after the contract was made, because the Building & Loan stock was to be paid back to June, 1927, when the last series of stock had been opened for subscription. If the defendant expected to exact a specific performance it seems that he should have sought that remedy earlier. The fact that he did not do so is a circumstance in favor of the plaintiffs. In addition to this, the preponderance of the testimony is with the plaintiffs. Mr. and Mrs. Frey and their daughter all testified that there was a new agreement on Turner's part to repay the $450.00 with interest. Opposed to this is the testimony of Turner himself, that it was conditioned on Mrs. Frey finding another purchaser for the property at $4600.00.

"If the question was that of rescission of a sale the case of Emmerling v. Beebe, 15 La. 251, would be applicable. Also Piper et al. v. Gray, 2 La. App. 315, where the above case is cited, but we are not here dealing with a sale, but a promise or agreement to sell. Art. 2462, C. C., as amended, says that a promise to sell so far amounts to a sale as to give either party the right to enforce specific performance. But defendant made no effort to enforce performance until this suit was filed. On the other hand he continued to collect rent at $40.00 a month, and apparently abandoned the contract to sell. He has had the rent paid promptly, amounting to more than 10% gross on the price of $4600.00, and depreciation, taxes and repairs ought to be taken care of out of the rent and leave a reasonable net return on the investment.

"I think the plaintiffs have met the burden on them to make out their case by a preponderance of the testimony, and finding nothing in the law that, in my opinion, cuts them off from recovery, there will be judgment in their favor for the amount sued for with 7% per annum interest."

A close study and examination of the record in this case fails to convince us that the trial judge has erred in his findings, as above quoted, but, on the contrary, we are convinced of the correctness of the

conclusions reached by him. However, we shall have to amend this judgment by reducing the rate of interest from 7 per cent to 5 per cent, as there is no written evidence in the record establishing agreement by defendant to pay 7 per cent. Testimonial proof is not admissible to establish the promise to pay conventional interest, and, if admitted without objection, should not be considered.

Civil Code, art. 2924; McLaughlin, Davis & Co. v. P. Sauve, 13 La. Ann. 99.

For the reasons assigned, the judgment appealed from is amended by reducing the rate of interest thereon from 7 per centum per annum to 5 per centum per annum and as thus amended, it is affirmed.

DREW, J., recused.